```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   WESTERN DIVISION
```

ROBERT H. DARVILLE, *et al.*                                PLAINTIFFS

v.                                    CIVIL ACTION NO. 5:20cv180-DCB-MTP

N. FORREST GERMANY, *et al.*                                DEFENDANTS

MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on a Motion to Dismiss/Stay [ECF No. 21] (the "Motion") filed by Defendant Denbury Onshore, LLC ("Denbury"). Having considered the Motion, the response in opposition, the other submissions of the parties, and applicable statutory and case law, and being otherwise informed in the premises, the Court finds as follows:

I. BACKGROUND

The Plaintiffs allege that they are the owners of undivided royalty and mineral interests in oil and gas production in the McComb Field Unit, Pike County, Mississippi (the "Unit"). [ECF No. 1-1] ("Second Amended Complaint") ¶ 3.  Denbury claims to be the current operator of the Unit.  Motion [ECF No. 21 ¶ 1].  The parties do not dispute that one of the Unit's unitized intervals, the "C" sand, was not included in the tract participation factors

1

in a Mississippi State Oil and Gas Board (the "Board") Order issued in 1998.  The 1998 Order required the operator to recalculate all tract participation factors, if the operator achieved any production from the "C" sand in the future.  Board Order No. 188-98 filed June 1, 1998 [ECF No. 1-1 at 30-40].[1]

The Plaintiffs claim that Denbury began producing oil from the "C" sand in April 2006 and failed to reallocate the tract factors in violation of the 1998 Order.  Second Amended Complaint ¶ 21; Memorandum Brief in Support of Response in Opposition to Motion to Dismiss/Stay [ECF No. 32 at 2, 8].  Some fourteen years later, on May 4, 2020, the Plaintiffs filed suit against the

---

[1]The 1998 Order provides in pertinent part:

    The Board finds that based on prior geological evidence submitted to the Board production exists in the Lower Tuscaloosa Field Unit in three separate sands which are referred to as the "A," "B," and "C" sands. In the initial phase of the McComb Field Unit there was some production from the "C" sand. The present operator of the McComb Field Unit, E.B. Germany & Sons, Inc., plans to produce oil and gas only from the "A" and "B" sands of the Lower Tuscaloosa Sand Oil Pool, McComb Field, Pike County, Mississippi, and, therefore, tract factors for tract participation in the 259 tracts within the McComb Field Unit are based upon "A" and "B" sands only with no credit given for the "C" sand.  In the event operator of the McComb Field Unit achieves any production from the "C" sand (Little Creek Sand) in the lower Tuscaloosa Sand Oil Pool, McComb Field, Pike County, Mississippi, in the future, operator of the McComb Field Unit will recalculate all unit tract participation factors to include credit for the "C" sand. No credit is given for the "C" sand at this time because there is no production planned at the present time from the "C" sand.

Order ¶ 14 [ECF No. 1-1 at 39].

defendants in the Circuit Court of Pike County, Mississippi.[2] The Plaintiffs allege breach of contract, liability for statutory interest on royalty proceeds, fraud and misrepresentation, conversion, wrongful taking and concealment, civil conspiracy, breach of the duty of good faith and fair dealing, joint and several liability, fraudulent concealment, and punitive damages. Second Amended Complaint ¶¶ 23-47 [ECF No. 1-1].

Asserting diversity jurisdiction, Denbury removed the action to this Court on September 14, 2020 (see Notice of Removal [ECF No. 1]). Thereafter, on December 8, 2020, Denbury filed a petition with the Board to establish recalculated unit tract participation factors for the "C" sand oil pools. See Petition of Denbury Onshore, LLC, Operator, to Establish Recalculated Unit Tract Participation Factors to Include Credit for the "C" Sand Oil Pools in the Unitized Formation of the McComb Field Unit, McComb Field, Pike County, Mississippi, Docket No. 3-2021-D [ECF No. 21-6] (the "Petition").

In its Motion to Dismiss/Stay, Denbury requests that the Court "dismiss or stay this matter until the Plaintiffs exhaust

---

[2] Denbury and Denbury Resources, Inc. are the only defendants that remain in this lawsuit. The Court previously dismissed defendants N. Forrest Germany, E.B. Germany & Sons, Inc., and E.B. Germany & Sons, LLC [ECF No. 28]. The Court also dismissed defendant Rosewood Partners, LLC. [ECF No. 36].

their administrative remedies and the Board establishes the recalculated tract factors for the Unit." Motion [ECF No. 21 ¶ 9]. In its Reply Brief [ECF No. 35], Denbury no longer pursues a dismissal; Denbury now asks that the Court stay this matter until after the Plaintiffs exhaust their administrative remedies at the Board, and the Board has recalculated the Unit's tract factors. Reply Brief to Plaintiffs' Response to Its Motion to Dismiss/Stay [ECF No. 35 at 11].

The Plaintiffs oppose both a dismissal and a stay. Response in Opposition to Denbury's Motion to Dismiss/Stay [ECF No 31]. The crux of the Plaintiffs' argument in opposition is that there is no adequate administrative remedy at the Board for the Plaintiffs' common law causes of action; the exhaustion doctrine is therefore inapplicable. [ECF No. 31 ¶¶ 1, 5].

## II. DISCUSSION

As this Court noted in a prior decision, before a plaintiff sues for activity subject to administrative agency review, the plaintiff must seek relief from the agency charged with regulating the activity. Miller v. Miss. Res., LLC, 5:17-cv-41-DCB-MTP, 2018 WL 934827, at *2 (S.D. Miss. Feb. 16, 2018) (relying on State v. Beebe, 687 So. 2d 702, 704 (Miss. 1996)). The instant case is substantively similar to the issues that the Court considered in Miller. As in Miller, the Court is

confronted with a predicate issue that is subject to the Board's regulatory authority.  At the core of the instant case is the recalculation of tract participation factors to include credit for the "C" sand oil pools in the Unit.  The Court finds that the Board has regulatory authority over such a determination.  Miss. Code Ann. § 53-1-17(3) (the Board has the authority and the duty to promulgate rules, regulations and orders that allocate production proceeds among owners); Miss. Code Ann. § 53-3-101-119 (statutes addressing the unitization of oil and gas fields and pools and providing for, among other things, the Board's authority to establish a compulsory unit); Miss. Code Ann. § 53-3-105 (fieldwide tract participation factors must be approved by an order of the Board); Miss. Code Ann. § 53-3-7 (the Board has authority over pooling orders and agreements); Miss. Code Ann. § 53-3-109 (the Board has authority to amend an existing order).  Given that the Board has expertise in this specialized area and regulatory authority to perform such a recalculation, the Court sees no reason, legal or otherwise, to proceed with the adjudication of this matter prior to the Board's determination.

The Plaintiffs suggest that "there is no reason why this litigation and Denbury's administrative proceeding cannot proceed concurrently, with the Board's ultimate determination of the tract factors potentially to be used as a component of certain damages."  Response in Opposition [ECF No. 31 ¶ 6].  While the

Court agrees that there is utility in permitting the Board to determine the tract factors, the Court sees no advantage in conducting concurrent proceedings at the Board and the district court.  Concurrent proceedings likely would result in inefficiencies, and possibly conflicts, which are completely avoided by respecting the principles of administrative exhaustion.  The United States Supreme Court befittingly explains:

> A primary purpose [of administrative exhaustion] is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions . . . frequently require expertise, the agency should be given the first chance to . . . apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

McKart v. United States, 395 U.S. 185, 193–94, 89 S. Ct. 1657, 1662–63, 23 L. Ed. 2d 194 (1969).

The need for the Plaintiffs to present their grievances to the Board is unaffected by their request for state law damages that are relief beyond the Board's power to grant.  E.g., Miller, 2018 WL 934827, at *2 (the plaintiffs must present their grievances to the Board before pursuing common law damage claims in this Court); Howard v. Totalfind E&P USA, Inc., 899 So. 2d

882, 888 (Miss. 2005); Town of Bolton v. Chevron Oil Co., 919 So. 2d 1101, 1107-08 (Miss. Ct. App. 2005).

Finally, the Court finds no exception to the doctrine of administrative exhaustion that would excuse the Plaintiffs from first pursuing to conclusion their remedies at the Board. In deciding if it should excuse the Plaintiffs' failure to exhaust, the Court considers whether (1) pursuing an administrative remedy would cause irreparable harm; (2) the Board "clearly" lacks jurisdiction; (3) the Board's position is illegal; (4) a legal issue is dispositive; (5) exhaustion would be futile; and (6) the suit is more efficiently resolved in this court. Miller, 2018 WL 934827, at *2-3; Pub. Emp. Retirement Sys. Of Miss. v. Hawkins, 781 So. 2d 899, 906 (Miss. 2010) (per curiam).

First, on this record, the Court sees no irreparable harm from permitting the Board to proceed. Denbury estimates that the trial at the Board on its pending Petition should take place in March 2021 and that the Board's order should become final in April 2021. Reply Brief [ECF No. 35 at 8]. A delay of approximately several months while the Board uses its expertise to recalculate the tract factors, an essential exercise in the resolution of this lawsuit, is not harmful to the parties. Second, the Mississippi Oil and Gas Board statutes cited above, the existing 1998 Order, and the Petition now pending before the Board confirm the Board's

7

jurisdiction to establish the tract factors at issue.  Third, no party has presented evidence, or even alleged, that the Board has taken an illegal position on any issue related to the Plaintiffs' case, and the Court is not aware of any such position. Fourth, the parties have not raised a dispositive legal issue that must be dealt with in this Court prior to the Board's recalculation of the tract factors.  Fifth, the discussion above demonstrates that exhaustion before the Board would not be futile.  The Plaintiffs themselves concede that exhaustion could serve a useful purpose in that the Board's determination of the tract factors may be used as a component of certain alleged damages.  Response in Opposition [ECF No. 31 ¶ 6].  Lastly, it is patently clear to this Court that the recalculation of tract participation factors in a compulsory fieldwide unit, which all parties must agree is necessary to the resolution of this lawsuit, requires the expertise and unique knowledge of the Board.  Such a determination is squarely within the Board's domain and cannot be more efficiently resolved by this Court.

    Accordingly,

IT IS HEREBY ORDERED that Defendant Denbury Onshore, LLC's Motion to Dismiss/Stay [ECF No. 21] is GRANTED IN PART as to its request for a stay and DENIED IN PART as to its request to dismiss this action;

    IT IS FURTHER ORDERED that this action is STAYED in its entirety pending the ruling of the Mississippi Oil and Gas Board on Defendant Denbury Onshore, LLC's Petition, Docket No. 3-2021-D, and the exhaustion of all administrative remedies before said Board.

    SO ORDERED, this the 1st day of March, 2021.

                                                 /s/ David Bramlette
                                               UNITED STATES DISTRICT JUDGE